IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SRM CONSTRUCTION MATERIAL AND SUPPLY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 4:15-cv-01155-JCH ) |
| KCI CONSTRUCTION COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, | ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants KCI Construction Company's ("KCI") and Liberty Mutual Insurance Company's ("Liberty Mutual") Motion to Stay Litigation and Compel Arbitration. (ECF No. 7.) The Motion is fully briefed and ready for disposition.

**BACKGROUND**

In July 2015, Plaintiff SRM Construction Material and Supply ("SRM") filed a Complaint against Defendants KCI and Liberty Mutual in federal court, asserting diversity jurisdiction. (Compl., ECF No. 1.) In the Complaint, SRM alleged the following facts.

In March 2014, SRM and KCI entered into a written construction contract (the "Subcontract"), wherein SRM agreed to provide construction services for "The St. Louis County Courts Project" (the "Project), and KCI agreed to pay SRM for its services. *Id.* ¶ 6. The Subcontract was governed by certain provisions of the Project's General Contract between KCI and St. Louis County. *Id.* ¶ 7. Pursuant to the General Contract, KCI would retain a percentage of all funds to be paid to a subcontractor until the subcontractor completed the work. KCI was

1

required to return the subcontractor's retained funds within 30 days of completion of the work. *Id.* ¶ 8. The General Contract also required KCI to acquire a statutory payment or performance bond for the Project (the "Bond"), which Liberty Mutual provided. *Id.* ¶¶ 10-11. In December 2014, SRM completed its work on the Project. *Id.* ¶ 8. Since then, KCI has refused to pay SRM in accordance with the terms of the Subcontract, and Liberty Mutual has refused to pay SRM under the Bond. *Id.* ¶¶ 9, 12.

SRM asserts four separate causes of action: (1) a breach-of-contract claim against KCI (Count I); (2) a quantum-meruit claim against KCI (Count II); a statutory-bond claim against KCI and Liberty Mutual (Count III); and a vexatious-refusal-to-pay claim against Liberty Mutual (Count IV). *Id.* ¶¶ 18-45. As relevant, SRM's quantum-meruit claim is based on allegations that "SRM provided labor and materials for the Project at the specific direction of KCI," and that "KCI has refused to make payment" for such labor and materials. *Id.* ¶¶ 26, 29.

In addition, the Subcontract, a copy of which SRM attached to the Complaint (ECF No. 1.1), contains an arbitration clause, which reads as follows:

> **4. ARBITRATION:** All claims or disputes between KCI and Subcontractor arising out of the Project or relating in any manner to the performance or breach of the Subcontract, shall be decided by arbitration which shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The arbitration shall take place in the locale where the Project is located or in St. Louis, Missouri as determined by KCI in its sole discretion. The award rendered by the arbitrator(s) shall be final and binding, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

*Id.* at 2.

As mentioned above, Defendants—relying on the arbitration clause contained in the Subcontract—have moved to stay litigation and compel arbitration. (ECF No. 7.)

2

**DISCUSSION**

I.   *Defendants' Request to Compel Arbitration*

The Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, "reflects a liberal federal policy favoring arbitration." *Torres v. Simpatico, Inc.*, 781 F.3d 963, 968 (8th Cir. 2015) (internal quotation and citation omitted). "Because arbitration is a matter of contract, whether an arbitration provision is valid is a matter of state contract law." *Id.* at 968 (internal quotation and citation omitted). "If a valid and enforceable arbitration agreement exists under state-law contract principles, any dispute that falls within the scope of that agreement must be submitted to arbitration." *Id.* (citation omitted); *see also United Steelworkers of Am., AFL-CIO-CLC v. Duluth Clinic, Ltd.*, 413 F.3d 786, 788 (8th Cir. 2005) (when deciding whether to compel arbitration, court applies two-part test; court first considers whether valid agreement to arbitrate exists, and then considers scope of agreement). If the arbitration clause is broad, the court "analyze[s] whether the dispute relates to the subject matter of the agreement." *Duluth Clinic*, 413 F.3d 786 at 789. "An order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 788.

Defendants argue that the Subcontract's broad arbitration provision is valid and enforceable, and encompasses the claims asserted by SRM against KCI. Defendants further argue that the pending litigation against KCI should be stayed pursuant to the FAA. (ECF No. 8 at 3-4.) In response, SRM argues that its quantum-meruit claim is based on an alternative theory that SRM performed work "above and beyond" what was required by the Subcontract, and that the claim therefore falls outside the scope of the arbitration clause. SRM does not challenge the

3

validity or enforceability of the arbitration clause, nor does SRM object to arbitration of its breach-of-contract claim against KCI. (ECF No. 9 at 2-3.)

The Court concludes that there exists between SRM and KCI a valid arbitration agreement, and neither party disputes that SRM's breach-of-contract claim falls within its scope. The Court further concludes that the arbitration agreement encompasses SRM's quantum-meruit claim against KCI. The arbitration clause plainly extends to "[a]ll claims or disputes between KCI and [SRM] arising out of the Project or relating in any manner to the performance or breach of the Subcontract." SRM's quantum-meruit claim is based on allegations that "SRM provided labor and materials for the Project," and that "KCI has refused to make payment" for such labor and materials. Therefore, the claim is clearly one that "aris[es] out of the Project." *See 3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1196, 1199 (8th Cir. 2008) (plaintiff's unjust-enrichment claim fell within broad scope of arbitration provision; liberal federal policy favoring arbitration agreements requires district court to send claim to arbitration when presented with broad arbitration clause as long as underlying factual allegations "simply touch matters covered by" arbitration provision); *cf. Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1035-36 (7th Cir. 2012) ("Given our broad reading of 'arising out of and relating to,' we are confident that [plaintiff's unjust-enrichment claim] also fall[s] within the scope of the arbitration clause.") (citation omitted). Thus, the Court will stay the pending litigation against KCI. *See* 9 U.S.C. § 3 (stay of proceedings where issue therein referable to arbitration); *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011).

II.     *Defendants' Request to Stay Pending Litigation Against Liberty Mutual*

"[T]he district court has discretion to stay third party litigation [that] involves common questions of fact that are within the scope of the arbitration agreement." *See AgGrow Oils, LLC*

*v. Nat'l Union Fire Ins. Co.*, 242 F.3d 777, 783 (8th Cir. 2001) (internal quotation and citation omitted) (alteration in original). "[A] discretionary stay may well be needed to further the strong federal policy favoring agreements to arbitrate," even if it results in piecemeal litigation. *Id.* "[I]n a complex, multi-party dispute…issues such as the risk of inconsistent rulings, the extent to which parties will be bound by the arbitrators' decision, and the prejudice that may result from delays must be weighed in determining whether to grant a discretionary stay, and in fashioning the precise contours of any stay." *Id.* at 783 (citations omitted).

Defendants argue that, because SRM's claims against Liberty Mutual depend on the resolution of the underlying dispute between SRM and KCI, the Court should stay the pending litigation against Liberty Mutual. (ECF No. 8 at 4-6.) In response, SRM argues that "Liberty Mutual's obligation to pay under the bond is a separate and distinct obligation and any liability on the part of Liberty Mutual is not contingent on finding KCI liable on any claim."[1] (ECF No. 9 at 3-4.)

Upon consideration of the relevant factors, the Court finds a stay of the pending litigation against Liberty Mutual appropriate. Contrary to SRM's assertions, SRM's claims against KCI and Liberty Mutual clearly involve common questions of law and fact, as Liberty Mutual's liability to SRM wholly depends on whether KCI is liable for breach of the Subcontract. *See Pace Const. Co. v. Travelers Cas. & Sur. Co. of Am.*, 259 F. Supp. 2d 934, 937-38 (E.D. Mo. 2003) ("[I]n Missouri, a surety's liability for contract damages is co-extensive with the liability of the principal"; principal must be liable to plaintiff before surety can be liable to plaintiff)

---

[1] SRM also argues that the surety contract is an insurance contract, and thus, under Missouri law, cannot be subject to a binding arbitration clause. (ECF No. 9 at 4-5.) However, Defendants do not argue that SRM's claims against Liberty Mutual are subject to the arbitration clause, only that the pending litigation against Liberty Mutual should be stayed until the underlying dispute between SRM and KCI is arbitrated.

5

(internal quotation and citation omitted). Permitting SRM's claims against Liberty Mutual to proceed would require the Court to render rulings on legal and factual matters which an arbitrator will soon consider. This would inevitably create a risk of inconsistent rulings, and could also allow SRM to avoid its duty to arbitrate with KCI the underlying issues related to the Subcontract. *See Sunopta, Inc. v. Abengoa Bioenergy New Techs., Inc.*, 4:08CV78 JCH, 2008 WL 782656, at *5-6 (E.D. Mo. Mar. 20, 2008). Therefore, Defendants' request to stay the pending litigation against Liberty Mutual will be granted.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants KCI Construction Company's and Liberty Mutual Insurance Company's Motion to Stay Litigation and Compel Arbitration (ECF No. 7) is **GRANTED**.

**IT IS FURTHER ORDERED** that this matter is **STAYED** pending completion of the arbitration process. The parties shall jointly submit a notice updating the Court on the status of this case no later than ten (10) days following the completion of arbitration.

**IT IS FURTHER ORDERED** that the Clerk of Court shall administratively close this matter until the parties notify the Court of the outcome of the arbitration process.

Dated this 11th day of September, 2015.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE